UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Children's Health Defense, Michele
Hertz, Petra Brokken, Dr. David O.
Carpenter, Dr. Paul Dart, Dr. Toril H.
Jelter, Dr. Ann Lee, Virginia Farver,
Jennifer Baran, Paul Stanley, M.Ed.
  Petitioners

v.

Federal Communications Commission
and United States of America,
  Respondents

No. 20-70297

Petition for Review of Order
by the Federal Communications
Commission

<u>REPLY TO FCC RESPONSE TO PETITIONERS' MOTION FOR AFFIRMATIVE RELIEF</u>

Pursuant to Fed. R. App. P. 27(a)(3)(B), Petitioners Reply to Respondent

FCC's Response (Dkt 13) to Petitioners' Motion for Affirmative Relief (Dkt 11).

The "document" challenged here has still not been published in the Federal

Register. Petitioners' Motion for Affirmative Relief sought clarification on

whether that means the FCC has not yet "issued" the order in whole or in part for

purposes of 28 U.S.C. §2112. The FCC's Response abjectly failed and refused to

take a position. The Court cannot grant the FCC's Motion to Transfer unless the

FCC clarifies its position on the notice question. The Court must grant Petitioners'

Motion for Affirmative Relief and require the FCC to state its position. Then, after

the FCC's clarifies, the Court should consider conducting an informal conference

with the D.C. Circuit to mutually devise an equitable solution that would allow the

28 U.S.C. §2112(a)(1) lottery process to play out.

I.      Background and Procedural History

The FCC released the document in issue on December 4, 2019. One group of

petitioners filed for review in the D.C. Circuit on the 58th day after release. The

Petitioners filed their petition for review in this Court on the 60th day. Both

petitions for review address and seek review of the FCC's decision to terminate a

"Notice of Inquiry" and the "Second Report and Order" approving final rule

revisions.

Page 10 of the Motion for Affirmative Relief (Dkt 11) explained that

Petitioners were waiting for the FCC to publish notice of the decision in the

Federal Register. They intended to file their petition for review within 10-days

after Federal Register publication (the "date of issuance") in order to have a change

for a lottery if any other petitioners also filed within that window. *See* 47 U.S.C.

2112(a)(1).

The FCC, however, failed to secure Federal Register publication before the

60th day after the December 4, 2019 release date. Petitioners therefore had to

choose between filing and waiting. The latter course would risk losing the right to

review if for some reason December 4, 2019 was in fact "Day 0" for any part of

the decision that did not require Federal Register publication for notice purposes

under 47 C.F.R. §1.4. Petitioners tried to avoid filing a potentially premature case. When the 60th day after release arrived, however, they had to file a protective petition even though it was likely premature. If the FCC ever gets around to securing publication, Petitioners will supplement their petition within the 10-day lottery window. This is what the D.C. Circuit has repeatedly recommended parties do when there is a potential question about notice.

The FCC has not yet fulfilled its ministerial duty to "**promptly** give notice" of the decision. *See* 28 U.S.C. §2344 (emphasis added). Instead, the Commission filed its Motion to Transfer (Dkt 10-1). Petitioners' Motion for Affirmative Relief (Dkt 11) fully explained the problem. Petitioners observed that a transfer at this point would entirely deny Petitioners any opportunity to have a chance for the lottery process, through no fault of their own. *Id.* p. 13.

The FCC responded to the Motion for Affirmative Relief (Dkt 13) by contending that 28 USC §2112 "is a mechanical rule" that requires transfer, even under the situation where transfer would operate to deny any chance for a lottery. The FCC asserts it can entirely avoid a lottery situation by withholding publication, thus forcing litigants to file premature petitions and then operate under the "first-filed rule." FCC Response p. 4. The Commission also claims that the "court where the first petition was filed" is the only one that can determine "questions as to the validity of petitions for review." *Id.* pp. 4-5. The agency maintains "Section

2112(a) governs transfer where proceedings have been instituted for review of an agency order in two or more courts of appeals, whether or not the order has been published in the Federal Register." *Id*. p. 6.

FCC asserted that it "has submitted materials to the Office of the Federal Register for publication of the Order" (*Id.* p. 6). The Commission did not provide any specifics regarding the submission, including the date it made the submission or the anticipated date of publication. The lack of specifics is an implicit admission FCC made the submission after, and only because, Petitioners had called them out for not yet arranging for publication. Even more important, the FCC refused to indicate whether the "materials" it has allegedly submitted include notice regarding the "Inquiry" portion of the matter – which is the sole challenged portion of the December 4, 2019 action that could possibly be "issued" on the release date rather than on the Federal Register publication date.

II.     The FCC's Plea for "Mechanical" Transfer Ignores the FCC's Past Expressed Preferences and Encourages Races to the Courthouse and Venue Gaming by Eliminating any Opportunity for a Party to Obtain a Lottery

The Federal Register publication date is "Day 0" for judicial review purposes for most FCC "documents." That is when the "document" becomes an "order" for purposes of 47 U.S.C. §§402(a) and 405(a). That is the date of "the entry of a final order" for purposes of 28 U.S.C. 2344 and the date of "issuance of the order" for purposes of 28 U.S.C. 2112(a)(1). *See* 47 C.F.R. §1.4(b)(1) (attached

to Motion for Affirmative Relief, pp. 55-59). *See also W. Union Tel. Co. v. FCC*, 773 F.2d 375, 378-380 (D.C. Cir. 1985). The FCC designed its rule defining when "notice" occurs to "make clear that the statutory terms 'entry' of a final order and 'the date upon which public notice is given' have the same meaning." *In re Addition of new Section 1.103 to the Commission's Rules of Practice and Procedures; Amendments to Section 1.4(b) of those Rules*, 85 F.C.C.2d 618, 623-624, ¶¶14, 16 (1981). We have not reached "Day 0" for at least the portion of the case involving rule amendments since the FCC has yet to publish. If the "Inquiry" portion also requires Federal Register notice Day 0 is still on the horizon as well.

The FCC observed in 1981 that it sees "no reason why interested parties cannot await formal publication before seeking judicial review." Allowing for this period of analysis and reflection "may encourage the parties to acquaint themselves with the Commission's written decisions before filing appeals, and may reduce the strain on judicial resources." *In re Addition of new Section 1.103 to the Commission's Rules of Practice and Procedures; Amendments to Section 1.4(b) of those Rules*, *supra,* 85 F.C.C.2d at 625-626 ¶¶18, 21. This is only so, however, if the FCC follows the 28 U.S.C. §2344 command and "**promptly**" executes its ministerial duty to affect notice through publication. If the FCC chooses to be dilatory and not secure publication before the 60th day after release, the parties have to file protective petitions or risk altogether losing the right to review. The

FCC's theory today is therefore obviously incompatible with its 1981 position. A party that tries the hardest to follow the FCC's 1981 entreaty and "await formal publication" will be punished; venue will be set by the party that most flagrantly ignores the 1981 admonition and files the first premature petition.

The case sat at the FCC for 6 years without action.[1] The decision largely maintaining the *status quo* was then patched together with some apparent haste. The Commission withheld publication after release and only started that process after Petitioners noted the failure. It carefully timed the release so it could try to cut off certain claims right before oral argument in *Sprint Corp. v. FCC*, Nos. 19-70123 *et al* (9th Cir.).[2] The FCC's obvious goal is avoidance of accountability and review. It is playing "keep-away" in two separate cases before this Court.

The FCC violated the duty to "promptly give notice" imposed by 28 U.S.C. §2344 as a ploy to entirely preclude the lottery option, get this matter before a different and preferred circuit and still potentially avoid review in the other case now in this Court. It will then move the D.C. Circuit for dismissal of both petitions

---

[1] Indeed, the FCC opened the "Inquiry" portion in 2013 only because it was pressured to do so by several members of Congress and the GAO. *United States Government Accountability Office, Report to Congressional Requesters, Telecommunications: Exposure and Testing for Mobile Phones Should Be Reassessed*, GAO-12-771 (July 2012).

[2] *See* Nos. 19-70123 *et al,* Dkt 185 (FCC cites release as a basis to dismiss certain issues raised by Montgomery County).

based on pre-maturity, at which point it will have won on all fronts. Even if the cases are abated until publication occurs and the petitioners file supplemental petitions they will remain at the D.C. Circuit. Petitioners will lose the opportunity to have any input on venue, including through the lottery mechanism, through no fault of their own.

The FCC asserts the process is "mechanical" but conveniently ignores that Congress amended §2112(a) in 1958 with the "mechanical" process in order to eliminate "the problem of an interested agency making a decision as to the forum." *USW v. Marshall*, 592 F.2d 693, 695-696 (3d Cir. 1979).[3] The first-filing rule, however, led to "difficulties administering such a system," *Gallup v. FERC*, 702 F.2d 1116, 1125 (D.C. Cir. 1983) ("*Gallup I*"), including multiple redundant and premature filings and sometimes injustice through the potential inadvertent complete loss of the right to review. *See, e.g., Gallup v. FERC*, 726 F.2d 772 (D.C. Cir. 1984) ("*Gallup II*").

Congress again amended the statute in 1988[4] to mitigate the chaos caused by the "first-filed" rule. They reduced the need for races and eased the administration problems that often ensued. What is now §2112(a)(1) provides for a lottery if multiple parties files for review within 10 days of "issuance." The problem here is

---

[3] *See also* S.Rep.No.2129, 85th Cong., 2d Sess. 2-4 (1958).
[4] Pub. L. 100–236, § 1, Jan. 8, 1988, 101 Stat. 1731.

that the FCC is withholding "issuance" in this case, thereby reintroducing the evils that confounded the courts and Congress sought to avoid and cure. The FCC's game, if successful, will prevent the lottery process from occurring in select cases. If the FCC prefers the venue selection of the first party to jump the gun in a premature race to the courthouse it can determine venue. This should not be allowed.

The courts have routinely used a "conference" procedure to resolve particularly difficult problems. There are many examples, but *USW v. Marshall*, 592 F.2d at 695 and *Gallup I*, 702 F.2d at 1121 explain. The courts involved will work out a method of determining which court should decide the proper location for filing of the record. *See, e.g., American Public Gas Ass'n v. FPC*, 555 F.2d 852, 857 (D.C. Cir. 1976) (Fifth Circuit allowed D.C. Circuit to decide proper location for cases); *Natural Resources Defense Council, Inc. v. EPA*, 673 F.2d 392, 396-397 (D.C. Cir. 1980) (discussing courts conferring to determine where the record should be filed).

The FCC misrepresents the courts' practice. FCC Response p. 4 asserts that the first-filed court gets to resolve all questions as to the "validity of petitions for review." That is incorrect. Each of the cases cited on FCC Response pp. 4-5 involved a situation where the petitioner in the second case wanted the "second court" to assess the viability of the case before the "first court." The second courts

correctly refused to "violate a sister court's province to decide the effect of a petition filed with that court." *Gallup I*, 702 F.2d at 1125. That is not the situation here: Petitioners are not asking this Court to determine the validity of the D.C. Circuit petition; we merely seek to have this Court fully exercise its proper role in the venue decision. For example, the D.C. Circuit made plain in both *Gallup* decisions that it retained the right to determine the validity of the petitions filed in its own circuit, and did not relinquish all participation in the choice of forum decision. It always intended that both courts would cooperatively determine which court should receive the record and then decide the merits. *Gallup II*, 726 F.2d at 773, n.8, *citing Gallup I*, 702 F.2d at 1125, n.1.

Although the situation is slightly different here, all your Petitioners ask is for the Court to refuse participation in an unfair scheme to deny us any opportunity for a lottery. It need not decide whether the D.C. Circuit petition is premature. All that is required is for the Court to (1) ensure the FCC proceeds to publication so Petitioners can amend to make the case ripe for the portions that require Federal Register publication and (2) mandate that the FCC disclose its position on whether the Inquiry portion is the type of case where Federal Register publication constitutes notice under its rules. Then, if necessary, the two courts can confer on where to go from there.

III.    The FCC Response Flagrantly Avoids Answering the Most Important
Question.

Petitioners' Motion for Affirmative Relief unequivocally called for the FCC

to clarify its position on whether the Inquiry portion is the type of decision that

requires Federal Register publication for notice purposes. The FCC Response

entirely ducked the question because it is embarrassing to the Commission's ploy.

This too cannot be allowed.

47 C.F.R. 1.4(b)(3) plainly states that for some "documents" the release date

operates as Day 0 even if there is subsequent Federal Register notice. *See also In*

*the Matter of Amendment of Section 1.4 of the Commission's Rules Relating to*

*Computation of Time*, 15 FCC Rcd 9583, 9584, ¶4 (2000). The driving issue here

is whether the "Inquiry" portion is or is not one such "document." If the Inquiry

portion requires Federal Register publication (Petitioners suggest it likely does

although it is not entirely clear) then Petitioners deserve the opportunity to make a

timely supplemental filing within the 10-day lottery window once notice finally

occurs. Petitioners should not lose that right merely because the FCC was dilatory

and some other party even more quickly jumped the gun with a protective petition.

The Court must require the FCC to clarify its position and its intentions; it

should not dispose, and certainly should not grant, the Motion to Transfer unless

and until the FCC does so. The Court should, if it deems necessary, confer with the

D.C. Circuit to devise a means by which publication can occur and Petitioners can

then supplement within the §2112(a)(1) lottery window. Any other outcome would reward the FCC for its gaming and reinstitute inappropriate incentives for parties to file premature petitions before publication in order to gain an improper venue advantage.

Petitioners request such further and additional relief as may be appropriate, necessary or proper under the circumstances.

Respectfully Submitted

 /s/
Robert F. Kennedy, Jr.
Children's Health Defense
48 Dewitt Mills Road
1227 North Peachtree Pkwy, Suite 202
Peachtree City, Georgia 30269
NY Bar No. 1999994
EMAIL: rfk1954@gmail.com
TEL: 914.882.4789
FAX: 512.692.2522


 /s/
W. Scott McCollough
McCollough Law Firm, P.C.
2290 Gatlin Creek Rd.
Dripping Springs, TX 78620
Texas Bar No. 13434100
EMAIL: wsmc@dotlaw.biz
TEL: 512.888.1112
FAX: 512.692.2522

Dated: March 4, 2020                    Attorneys for Petitioners

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(C) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains 2,441 words, or

    ☐ this document uses a monospaced typeface and contains ___ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman, or

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

                                        /s/_____
                                        W. Scott McCollough